v. David Allen, etc., et al. We will take a break after this case. Mr. Marchese.  May it please the Court, Peter Marchese on behalf of the defense. This appeal involves two broad categories of claims which survive summary judgment, and I am well aware, both having been an active participant in the recent Pitten v. Escorcio matter and having received this Court's order issued by Judge Selya, that one of the paramount concerns is whether there is appellate jurisdiction on the qualified immunity exception to the final judgment rule. I believe, and certainly at least intended, that our brief would make clear that our position is that on the undisputed facts, and as to those facts of which are disputed, viewing them under the plaintiff-friendly summary judgment standard, that is to say, viewing them in a light most favorable to the plaintiff, as a matter of law, the defendants should prevail both on the merits analysis of the qualified immunity equation, as well as the clearly established matter. Proceed. Thank you. I thought you had a question. What is troubling me about your brief is that your brief seems to assume that as long as we take the facts most favorably to the plaintiff, that the question of whether those facts are sufficient to make out an actionable claim against your clients, that that question is open on this appeal. And I think that's exactly what Pan and Escorcio and Katie and Dominguez and the other cases we've cited to you say, that that isn't open. That once the district court decides sufficiency, an interlocutory appeal can't be used to relitigate sufficiency. You can show us that the district court made an error in ascertaining what law was or was not clearly established, some collateral issue like that, but you can't relitigate the question of sufficiency. Well, I guess respectfully, Judge Selye, I wouldn't agree with that entirely. But Pan was your case, Pan and Escorcio, and I think Judge Baldock in Pan and Escorcio said that about as clearly as it can be said. He did say that, and there's actually a petition for re-hearing filed because we believe that there is a point, and that applies there as well as here, that there has to be a certain level of evidence which generates a factual issue, and that up until that point, it is purely a legal question on the merits prong of the qualified immunity analysis. So would you mind telling us what you think the clearly presented legal questions are? In this case, yes, Judge, there are two, as I say, categories of claims that have survived summary judgment. One is whether there was a punishment of a pretrial detainee without adequate procedural due process. And the second is whether there was retaliation against the plaintiff for exercising his First Amendment rights. And with respect to the ‑‑ I'm sorry, but that framing of it refers to the facts of the case. Let me approach it a little bit differently then. Yes, you better. Was it clearly established that on the facts of the case, as found by the magistrate and adopted by the district court, was it clearly established that the actions taken by the defendants amounted to punishment without procedural due process and retaliation in response to exercise of First Amendment rights? You see, the actions refer to God knows how many actions as to which the district court does find there are some disputes of fact. Even that articulation of the question doesn't help me understand what the legal issues are in this case. This case is a far cry from the easier cases where you just have an issue of law and you have some Supreme Court guidance and then you look at whether it's clearly established. This case would require us to ferret and winnow and determine whether there is a fact dispute or not. And that is not the purpose of interlocutory appellate jurisdiction. But the purpose, Judge Lynch, of interlocutory appellate jurisdiction in qualified immunity cases is to protect those defendants who may have committed constitutional violations but would not have been on notice because of prior case law that the specific actions that they took in the context of this case would have done so. And yes, there were a lot of actions. There were a lot of things that happened. So it's not an easy case. You can say that. Let me ask just in practical terms. I take it that the real problem here is sort of the physical configuration of the building. That pod A is used for the more serious criminals and as a result they do daily strip searches of those who enter and go into pod A. Yes, it's used for the maximum security, for disciplinary segregation and for administrative segregation. Now, you've put One minute, Chief Judge Lynch. It's not a question of daily strip searches going in and out of the building. It's multiple strip searches of those people while they're within the building on an automatic basis virtually every time they move within the building. Two points there. Number one, that is correct when they're entering, going from a less secure area to a more secure area. And it's also true within that secured area when they're moved from one place to another. And I believe this court in Arruda v. Fair sanctioned exactly that type of conduct. Why is the administrative segregation unit there? Why isn't it someplace else where couldn't you easily solve this case by just putting it someplace else? Well, I mean, if resources were limitless and the building could be reconfigured, maybe that's the case. Have you ever explored that? But the record doesn't contain that, I guess, is the best answer. So I would be sitting here saying things that maybe I know that don't have a basis in the record. But remember, the question under Turner v. Safley is whether the response is reasonable and rationally related to a legitimate governmental purpose, which in this case is safe and secure operation of the jail. It doesn't have to be a perfect fit. It just has to be not an exaggerated response. But isn't it just sort of a key underlying question whether it's necessary that the administrative segregation unit be there? Couldn't you solve this whole case by having it somewhere slightly else where it's not subject to the normal APOD rules? Let's assume that you could. The role of the court is not to tell the prison administrators how to run the jail. Prison administrators are generally accorded wide-ranging deference in the decisions that they make about the safe and secure operation of the jail. And the fact that there maybe could have been some other alternative which would have been better doesn't mean that what they've done is a constitutional violation. It subjects you to suit by individual inmates who say that given the artifacts of the building and that as soon as they're hit with administrative segregation, they are subject to this treatment. I know the law uses the term punishment. Let's just put that aside. Even if the maximum possible administrative penalty would be far less than what they have to go through just being put in administrative segregation. That's what the case is about. One wonders why this is necessary. When I come back to the answer I just gave, let's assume that it's not entirely necessary, that only part of it is necessary, that there could be some other alternative that was somewhat less restrictive. When people deliberately impose these additional burdens on inmates in retaliation for the exercise of their First Amendment rights, we have to take that as true. And you want us to find a legal question against that assumption which is clearly presented here. I will agree that we have to accept at least the inference that there was retaliation as one of the reasons for the motivation. But the record is undisputed with respect to these strip searches that every single person who moves within this pod is strip searched. But that's beside the point. If we can't review the district court's conclusion that the evidence is sufficient here to make out a genuine issue as to retaliation, then we have a situation where the plaintiff is moved from one section of the jail to another, and there is no question that the effect of that move is to subject him to much more onerous treatment. Whether that treatment is itself constitutionally adequate isn't the question. His level of punishment, his level of sanction has been ratcheted up in retaliation, and that in itself makes up the cause of action, doesn't it? In order to deny qualified immunity, there has to be some case law, either from this circuit or an abundance of cases from other circuits that would have told each and every one of these individual defendants that based upon their limited involvement with this individual that what they were doing violated his constitutional rights. And you suggest that there's a legitimate question as to whether a reasonable correctional officer would know that if he or she retaliated against an inmate by putting the inmate in a situation where the inmate would receive much more onerous punishment, that that would be okay? But Judge, under the case law, if you have an action that is partially retaliatory and liability doesn't exist, and so when you look at that with a qualified immunity overlay, and we've cited those cases in our brief, how would these individuals know that if something was even partially retaliatory, but partially for a permissible purpose, and that is undisputed. There's an affidavit in the record, it's Sean McGuire, it's paragraph 53, and it says every single person, whether they're ad sec, disciplinary segregation, or maximum security, when they come into that unit and when they move to different areas of that unit, are subject to strict sanctions. Are you conceding that there was some retaliatory motive? No, I'm conceding it for purposes of this argument, because I have to concede that under the standard. But even if there is, the case law is clear that if there's a mixed motive, and I'm borrowing that inartfully from another area of the law, but is partly for retaliatory purpose and partly for permissible purpose, then there's no liability. Thank you, counsel. Thank you. Good morning, your honors, Michael Waxman here on behalf of Mr. Robert Gogan. I don't have a whole lot to say, I think I've said most of what I wanted to say in the brief. Well, you didn't adequately cover the question of appellate jurisdiction. You've now received an order from the court to do so, so you ought to feel under some obligation to do so. And I appreciate the court's underscoring that. Yes, I think that this court, with all due respect, doesn't, in light of recent case law, have jurisdiction to entertain this appeal, because there is not a purely legal question presented. I think giving the plaintiff the benefit of the summary judgment benefit of drawing all inferences and so forth in his favor, I think we are left with the conclusion that a reasonable And that, of course, is the overarching issue in this case, is whether or not this being subjected to these onerous conditions does constitute punishment, and that's a very hotly disputed issue. Actually, I'm less certain that you're right than you are. He says, given all of that, even if it's a form of punishment, there is a penological purpose for it. It may have been a mixed motive, that it's pretty obvious on the face of it that there are some strong inmate safety purposes that are being served here. And that's all it should take to give us qualified immunity. Doesn't matter what the jury finds. Once it's perfectly obvious on this record that there are penological objectives to be served, we're entitled to immunity. That's his argument. Right. And I don't think, frankly, the record does show that there are any well-articulated penological objectives for what was taking place with Mr. Gogan, quite frankly. OK, why not? Why not? Yeah. Given the physical layout of the prison facility, that's the only place they have to put those in administrative segregation. Right, but given the nature of the alleged violations that were taking place, which I think were fairly minor, it doesn't seem to make sense that one would need to immediately segregate the prisoner, certainly without being given pre-deprivation due process. So your position, as I understand it, is that there was no legitimate purpose for putting him in ADSEG in the first place, that that was pure retaliation, and that the mere transfer into ADSEG, because it restricts his privileges in various ways, punishes him regardless of whether there's a valid penological purpose for the way ADSEG is operated. That's correct, and these jail- Didn't the district court find that, in fact, he says a number of the charges were trumped up, didn't the district court find that they were not trumped up, there was some basis for it? There was some basis, and there was actual, when there was finally a hearing given, there was some basis for it, and the district court also noted that those were all fairly minor offenses for which the ultimate remedy was- Yeah, but you didn't make the remedy argument to Judge Selya. You didn't make the argument that ADSEG is prohibited when it imposes greater burdens than would reasonably come out of the charges that were leveled. But that's one of the indicia one can use to determine whether or not what's taking place is punishment, right? That the ultimate remedy given pales in comparison to what they've had to suffer through because of the immediate placement into ADSEG. That gives us some idea of what was in the minds of these jailers. This happened on many, many occasions. They had to know that when an inmate has a soap dish in his cell that he didn't pay for, that likely the results, once one gets a hearing on that, is going to be a $10 fine or a three-hour cell, having to stay in the cell. It's not going to be 21 days in ADSEG getting strips hurt six times a day. That gives us some idea of what the motivation here is, and the motivation was retaliation. A jury could easily find. In any event, I don't think there are any clearly stated, purely legal issues in this case. I think it all comes down to what was the motivation for being put in ADSEG in the first place? What was the motivation for being unilaterally classified as a maximum security prisoner? And the idea that, well, these strip searches take place for all of these people, so it shouldn't make any difference. Those other people have already been convicted. Those other people have already been found to have committed a discipline charge that requires as a remedy that they spend significant time in ADSEG. Mr. Goggin was put there immediately upon there being any kind of very de minimis charge levied against him without being given the right that the Constitution requires and has required under the U.S. Supreme Court's tutelage since the 1970s. There can be little doubt, in my view, that these jailers knew exactly what the law was and what it required, and they did this completely on their own because they wanted to subject Mr. Goggin to humiliation. And that's not okay under the Constitution.